Bryce **BEATTIE**, Plaintiff, Appellant,

v.

Frances W. **ROBERTS** et al., Defendants, Appellees.

No. 7695.

United States Court of Appeals, First Circuit.

Jan. 6, 1971.

Charles P. Barnes II, Portland, Me., with whom James R. Flaker and Linnell, Perkins, Thompson, Hinckley & Thaxter, Portland, Me., were on brief, for plaintiff, appellant.

Barnett I. Shur, Portland, Me., with whom Wilson, Steinfeld, Murrell & Lane, Henry Steinfeld, Charles A. Lane, Bernstein, Shur, Sawyer & Nelson, Gregory A. Tselikis, and George M. Shur, Portland, Me., were on brief, for defendants, appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This case concerns the procedural rights of tenured public school teachers whose employment contracts are not renewed. Plaintiff, a tenured teacher, taught for five years in the Windham, Maine, school system. On November 18, 1969, the Superintending School Committee voted not to renew his contract. The Superintendent of Schools notified plaintiff of the Committee's decision in a letter dated December 13. Plaintiff requested a list of reasons for the Committee's action and a hearing before the Committee. In a letter dated December 31, the Superintendent responded, setting a hearing date for January 21, 1970, and the Committee's counsel furnished a list of reasons on January 14.

On January 21 the Committee met in executive session for the purpose of conducting the requested hearing. Both the Committee and plaintiff were represented by counsel; witnesses were present; and a stenographer recorded the proceedings. Plaintiff's counsel raised several procedural objections. He protested because the hearing was not public, because the witnesses were sequestered, and because he was denied permission to cross-examine members of the Committee. The Committee refused to sustain any of these objections, and plaintiff declined to participate further in the proceedings. The merits of the list of reasons were never reached; the Committee's initial decision not to reemploy plaintiff remained in effect. Plaintiff brings this action, under 42 U.S.C. § 1983, against the Superintendent and the members of the School Committee alleging that he was denied due process. Summary judgment was entered by the district court after a finding that the Committee had afforded plaintiff procedural due process and that plaintiff had failed to exhaust his administrative remedies. From that decision, plaintiff appeals.

Initially, we are confronted with the question of exhaustion of administrative remedies: can plaintiff bring this action, having refused to participate in the January 21 hearing? This court has recently indicated that plaintiffs who bring § 1983 actions must normally exhaust available administrative remedies. Dunham v. Crosby, 435 F.2d 1177, n. 2 (1st Cir. 1970); Drown v. Portsmouth School District, 435 F.2d 1182, n. 10 (1st Cir. 1970). We require exhaustion, in part, because we hesitate to hold members of school committees liable for tentative dismissal decisions when they

are denied the opportunity to view the issue in the light of the facts and argument which the affected teachers might introduce in a formal hearing. Plaintiff argues, however, that the procedure followed by the Committee in considering his case was not the procedure required by state statute. Having recently held that § 1983 defendants who short circuit a plaintiff's statutory procedural rights cannot assert the defense of failure to exhaust administrative remedies, Dunham v. Crosby, *supra*, we must consider plaintiff's statutory argument.

■ A tenured teacher's procedural rights are set forth in 20 Me.Rev.Stat. Ann. § 161(5):

> "After a probationary period of 3 years, any teacher, who receives notice in accordance with this section [i. e., at least 6 months before the terminal date of the contract] that his contract is not going to be renewed, may during the 15 days following such notification request a hearing with the school committee or governing board. He may request reasons. The hearing shall be private except by mutual consent and except that either or both parties may be represented by counsel. Such hearing must be granted within 30 days of the receipt of the teacher's request."

Plaintiff presently asserts that the Committee violated this procedure in two ways. First, he reads the statute to require the Superintendent to notify a teacher before he recommends to the Committee that the teacher's contract not be renewed. According to plaintiff's theory, the teacher would then be afforded the opportunity to request the Superintendent's reasons for so recommending and a hearing before the entire Committee. If he requested such a hearing, the Committee would initially consider the issue of his non-renewal at the date of the hearing; presumably it would be improper for the Committee to consider dismissing a teacher even preliminarily if the teacher were not present.

■ We see no basis in the above statute for plaintiff's interpretation. Under the statute, a teacher is entitled to notice "that his contract is not going to be renewed * * *", not notice that the Superintendent has recommended non-renewal. The language contemplates action by the entire Committee before the teacher is notified. Moreover, plaintiff's interpretation assumes that there is no occasion for the Committee itself to initiate a dismissal, yet the Committee is expressly granted the power to initiate a dismissal under the Maine statute. 20 Me.Rev.Stat.Ann. § 473(4).

Plaintiff says, secondly, that he was not given an adequate statement of the Committee's reasons as required by the statute. He protests that the list of reasons came from the Committee's attorney and not from the Committee. Plaintiff's claim that the Committee must furnish its reasons before it holds a hearing is inconsistent with the interpretation of the statute urged in his first argument. The Committee could not furnish its reasons before the hearing unless it had previously considered the matter. The statute says only that the teacher has the right to "reasons", but we assume the requirement is designed primarily to assist the teacher in preparing for the hearing before the Committee. In this case, the Committee's attorney submitted to plaintiff a detailed list of 17 incidents which underlay the Committee's November 18 action. The same attorney instructed the members of the Committee at the January 21 hearing that they were to consider only those reasons on the list. Plaintiff was clearly put on notice of the charges against him. Although the Committee preferred to characterize the list as a list of unproven charges rather than reasons, that fact did not prejudice plaintiff in any way; indeed, regarding the list as charges to be proven instead of reasons to be rebutted may have eased plaintiff's burden of proof and should have eased his mind of the mat-

ter initially discussed, namely, that the Committee had prejudged its case.

Nor are we able to attach material significance to the fact that two of the events included in the list of reasons occurred after the November 18 meeting when the Committee voted to dismiss plaintiff. We see no reason why the Committee should have ignored incidents occurring after November 18 as long as plaintiff was put on notice before the January 21 hearing of all such events the Committee would consider. The Committee could have considered those incidents, after November 18, which indicated a continuing course of improper conduct.

In fact, the Committee may have afforded plaintiff more procedural protection than he was entitled to under the statute. For example, a stenographic record of the January 21 hearing was kept. Under these circumstances, we see no justification for plaintiff's refusal to follow the proceedings through to the end.

■ Alternatively, plaintiff claims that the procedure was constitutionally objectionable. He argues that due process requires a completely neutral decision-maker at the hearing and that the Committee, having already made an initial decision not to renew plaintiff's contract, was not impartial. This contention is raised for the first time on appeal. At no point before or during the aborted hearing before the Committee did plaintiff suggest that it was constitutionally incompetent. His sole efforts were to achieve a public hearing, the non-sequestration of witnesses, and cross-examination of Committee members. The complaint similarly addressed alleged procedural deficiencies, not only excluding any complaint as to the incompetence of the Committee, but, as in the instance of charging its refusal to conduct a public hearing, at least in substantial part inconsistent with any claim of incompetency. Of even greater perti-

nence is the fact that at no point does the record show that this matter was argued or even alluded to before the district court. After full oral argument was had and after the court read the transcript of the Committee hearing, the court accompanied its bench ruling on defendants' motion to dismiss with a summary of plaintiff's contentions—the three we have noted above—and the applicable law. On concluding, the court inquired of counsel if there were any misstatements. Plaintiff's counsel then called the court's attention to its omission of a fourth contention: that the Committee had refused to state whether it adopted any or all of the reasons contained in the January 14 letter of the Committee's counsel. The court responded and the hearing concluded.

Notwithstanding the obvious inappropriateness of considering an issue neither pleaded nor argued below, which was never called to the district court's attention, *see, e. g.*, Hap Corp. v. Heyman Mfg. Co., 361 F.2d 329, 331 n. 3 (1st Cir. 1966), we might on rare occasion consider it if the facts pleaded, *proved, or sworn to clearly pointed to a blatant and clear deprivation of constitutional rights.* This, however, is not such a case. Such law as exists on the constitutional requirement and definition of an "impartial tribunal" in cases of teacher dismissals is varied and murky. The policy implications are vast.

■ We have recently recognized that a determination of what procedures afford dismissed teachers due process requires a complex balancing of interests. Drown v. Portsmouth School District, 435 F.2d 1182 (1st Cir. 1970). In *Drown* we considered the dismissal of a non-tenured teacher, but we have not yet confronted a case involving a tenured teacher. There is some authority for plaintiff's proposition, Pickering v. Board of Education, 391 U.S. 563, 578 n. 2, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (dictum), but we note that no court has

required a school system to create the procedure plaintiff seeks.*

We see serious problems with this procedure because it would either prevent a Committee from initiating a dismissal or permit it to initiate a dismissal but then require another body of neutral outsiders to review personnel decisions that are properly the responsibility of the Committee. *See Drown, supra* at 1187. A requirement that the Superintendent serve as prosecutor and bring a proposed dismissal before the Committee for the first time in an adversary proceeding is inconsistent with the Maine statute authorizing the Committee to initiate dismissals. 20 Me.Rev. Stat.Ann. § 473(4). There would still be no guarantee that the Committee would not already have learned of the case in carrying out its duties. The separation of function might well be only facial and insubstantial. There would also be a greater chance of an unwise initial decision to dismiss because only one man, as opposed to the entire School Committee, would have been involved. If we required the state or municipalities to create neutral bodies to which the Committee's decision to dismiss could be appealed, we would be engrafting into educational administration an appellate layer of enormous complexity, and might well exceed the boundaries of our judicial authority and trespass into legislative territory.

Furthermore, plaintiff's dual failures to exhaust his administrative remedies and to present the issue to the district court have foreclosed any analysis of the workings of the present Maine procedures, an exploration we would deem essential to any sensible balancing of the interests of tenured teachers and school committees.

Affirmed.

---

* There is, however, some case law to the effect that due process requires an impartial tribunal. *E. g.,* Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970) ; Wasson v. Trowbridge, 382 F.2d 807, 813 (2d Cir. 1967) ; Esteban v. Central Missouri State College, 277 F.Supp. 649, 651 (W.D.Mo.1967). Some of these cases concern the expulsion of college students for disciplinary reasons where the interests to be balanced are different—perhaps materially different—from this case. *E. g., Wasson, supra; Esteban, supra.* On the other hand, some cases concerning the procedural rights of dismissed teachers are silent on the nature of the tribunal. *E. g.,* Roth v. Board of Regents, 310 F.Supp. 972 (W.D.Wisc. 1970) ; Lucia v. Duggan, 303 F.Supp. 112 (D.Mass.1969) (both cited with approval by plaintiff). In none of these cases is there any discussion of what is meant by an "impartial tribunal". Must an impartial tribunal have had no previous contact with the case, as plaintiff urges, or is a tribunal impartial if none of its members are personally interested in the outcome, *cf.* Pangburn v. C.A.B., 311 F.2d 349, 356–358 (1st Cir. 1962)? *See generally* Wright, The Constitution on the Campus, 22 Vanderbilt L.Rev. 1027, 1080–81 (1969).