**Thomas E. (Ted) DAVENPORT, Plaintiff,**

v.

**John T. CASTEEN, III,
et al., Defendants.**

Civ. A. No. 94–0012–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

March 16, 1995.

Deborah Chasen Wyatt, Wyatt & Carter, Charlottesville, VA, for plaintiff.

James S. Gilmore, III, Office of the Atty. Gen., Richmond, VA, James J. Mingle, Gen. Counsel's Office, Beth C. Hodsdon, University of Virginia, Charlottesville, VA, for defendants.

## MEMORANDUM OPINION

WILSON, District Judge.

This is an action pursuant to 42 U.S.C. § 1983 by Thomas E. Davenport against John T. Casteen, III, and W. James Copeland, Jr., alleging that Casteen and Copeland infringed his liberty and property interests in violation of the Fourteenth Amendment to the United States Constitution. Davenport is a former employee of two private, nonprofit corporations, the Virginia Student Aid Foundation (VSAF) and the Virginia Auxiliary Services Foundation (Services Foundation). VSAF is a charitable corporation established to provide a source of funding for athletic grants-in-aid at the University of Virginia (the "University"), and Services Foundation is a corporation that manages a private, University-affiliated golf course. Casteen is the University President and Copeland is the former University athletic director. Davenport maintains that Casteen and Copeland caused VSAF and Services Foundation to discharge him without due process, and that Casteen and Copeland infringed his "liberty interests" by defaming him at the time he was discharged without affording him a meaningful opportunity to clear his name. The court finds that res judicata bars this action; that Davenport's discharge from two private foundations implicates no property or liberty interests; and that, even if Davenport's discharge implicated his property or liberty interests, those interests were protected abundantly by the process afforded Davenport.[1]

---

1. Casteen and Copeland have moved to dismiss based on res judicata and filed supporting exhibits and affidavits. Davenport has responded that the motion is mislabeled a motion to dismiss rather than a motion for summary judgment. Davenport is obviously correct but is, nevertheless, on notice that the court is treating the motion as one for summary judgment, *See Gay v.*

## I.

VSAF is a private, non-stock, Virginia corporation governed by a twenty-five member board of trustees. Services Foundation is, likewise, a private, non-stock, Virginia corporation. VSAF solicits charitable contributions to support the University's intercollegiate athletic programs and to fund grants-in-aid to the University's student athletes. Services Foundation manages a private, University-affiliated golf course. Neither Casteen nor Copeland is an officer or board member of either foundation. Davenport occupied half-time positions as fund raising consultant for VSAF and director of the Services Foundation from 1988 until those foundations discharged him in April of 1992.[2] During that period, his salary was funded by the foundations, although the University acted as the foundations' paying agent.

In May of 1991, the University reported to the National Collegiate Athletic Association (NCAA) that it had discovered possible violations of NCAA rules prohibiting payment of excess benefits to student athletes by the University or an affiliated association— VSAF. Casteen named an inquiry group to investigate the allegations, and VSAF began its own investigation. Davenport retained counsel to protect his interests. In furtherance of its investigation, the inquiry group questioned Davenport orally on two occasions, both of which were transcribed by a court reporter. (Low Aff.Def.'s Ex. M at 2.) Copies of the transcript were then provided to Davenport for correction, clarification, or supplementation. (Low Aff.Def.'s Ex. M at 2.) Later, because Davenport had health concerns, the inquiry group agreed to submit written questions to him to which he was permitted to respond in kind. (Low Aff. Def.'s Ex. M at 3.) On completion of its investigation, the inquiry group, without making formal charges, compiled a report which included findings regarding "possible NCAA violations". The inquiry group provided Davenport with an advance copy of the report for comment. (Low Aff. Def.'s Ex. M at 3.) The report was then forwarded to Casteen.

From its own investigation, VSAF concluded that Davenport had breached his employment contract. By letter of April 8, 1992, VSAF notified Davenport's counsel of its conclusion, specified the conduct that it considered wrongful, and invited a response:

> [T]he VSAF would like to give Mr. Davenport an opportunity to be heard with respect to the above transactions, and any others if he so chooses.... Accordingly, Mr. Davenport is invited to appear before the VSAF Executive Committee at 12:30 PM on April 16, 1992, at the Boar's Head Inn, to address these issues.

(Letter from Daniel to Davenport's Counsel of 4/8/92, Def.'s Ex. O at 2–3.) Davenport declined to attend the designated April 16, 1992, hearing. On April 23, 1992, Casteen delivered a letter to Davenport informing him that he was "directing VSAF and [Services Foundation] to initiate termination proceedings" and, in a public meeting of the University Board of Visitors, Casteen disclosed the findings of the investigation. The Board of Visitors, in turn, adopted a resolution endorsing Davenport's termination, and that same day VSAF and Services Foundation terminated him.

Later that day, Davenport filed two separate motions for judgment in Albemarle County Circuit Court contesting his discharge. In those suits, Davenport claimed that VSAF and Services Foundation dismissed him in violation of his employment agreements. He also alleged that Casteen and Leonard W. Sandridge, Jr., senior vice-president of the University, tortiously interfered with his contractual relationships.

---

*Wall,* 761 F.2d 175 (4th Cir.1985), and he has responded with affidavits and exhibits of his own.

At the hearing on the motion, the court addressed the question of whether Davenport's discharge implicated his property and liberty interests, and the court directed the parties to address that issue. Both parties submitted memoranda with accompanying exhibits and affidavits. In addressing the issue, Casteen and Copeland have also argued that they are entitled to summary judgment on the additional ground that Davenport was afforded procedural due process. That issue is now fairly presented for decision, as well. *Id.* at 177.

**2.** Davenport served as the executive director of VSAF from 1981 through 1987.

Davenport sought $175,000 in damages from VSAF and Services Foundation, and $1,000,-000 in each action from Casteen and Sandridge, jointly and severally. Casteen and Sandridge demurred. By Order dated September 11, 1992, the court sustained the demurrers on the ground that Davenport failed to plead a legally sufficient tortious interference claim. Davenport was granted leave to amend.

Davenport filed an amended motion for judgment solely in the VSAF suit. Davenport did not amend his motion for judgment in his suit against Services Foundation. Because Casteen and Sandridge were dismissed, that case proceeded strictly against Services Foundation alleging breach of contract. Davenport settled his suit against Services Foundation in November of 1992, and the parties subsequently dismissed that action with prejudice.

In his amended motion for judgment, Davenport restated his breach of contact claim against VSAF, and he also included three tort counts seeking $4,000,000 in damages against Casteen.[3] One count was another tortious interference claim, and the other two were defamation claims. Casteen again demurred. The circuit court concluded that Casteen's contested statements were not defamatory and dismissed him "with prejudice." The circuit court also granted summary judgment to VSAF on Davenport's breach of contract claim. Davenport filed petitions with the Virginia Supreme Court seeking appellate review. Finding no error, the Supreme Court rejected Davenport's petitions.

## II.

Davenport asserts that Casteen and Copeland, acting under color of state law, deprived him of property and liberty without due process in violation of the Fourteenth Amendment. Casteen and Copeland contend that these claims are barred by res judicata. The court agrees.

**3.** Mr. Sandridge was dropped as a defendant in Davenport's amended motion for judgment.

**4.** In Virginia, a demurrer, if sustained, is a decision on the merits. *Haskins v. Haskins*, 185 Va. 1001, 41 S.E.2d 25 (1947); *Gimbert v. Norfolk*

"[A] federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Under Virginia law, "[a] ... judgment ... in favor of [a party] bars relitigation of the *same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies." *Bates v. Devers*, 214 Va. 667, 202 S.E.2d 917, 920–21 (1974); *Brown v. Haley*, 233 Va. 210, 355 S.E.2d 563, 567 (1987). Applying Virginia's law of res judicata, the court concludes that the dismissal of Davenport's defamation and tortious interference claims by the state court precludes this action. In so concluding, the court finds first—that Davenport is attempting to litigate the same "cause of action" as Virginia defines that term for purposes of res judicata and second—that the action is between the same parties or those in privity with them.[4]

In Virginia, "[t]he test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim." *Brown v. Haley*, 233 Va. 210, 355 S.E.2d 563, 567 (1987); *Jones v. Poindexter*, 903 F.2d 1006, 1010 (4th Cir.1990). Applying the same evidence test, the court readily finds that Davenport's claims in this suit are part of the same cause of action dismissed by the circuit court. Defamatory statements are central to Davenport's liberty interest claim, and Davenport's contractual relationship with his employer is central to his property interest claim. Thus, there is a central core of evidence that necessarily is common to Davenport's earlier suit and each of the claims in this suit. Consequently, res judicata bars this action as to Casteen, leaving the question of privity as to Copeland.

*Southern Railroad Co.*, 152 Va. 684, 148 S.E. 680 (1929). Thus, there was a final judgment on the merits against Davenport in the earlier state court litigation.

■ Privity is "merely another way of saying that there is sufficient identity between parties to prior and subsequent suits for res judicata to apply...." *Meza v. General Battery Corp.,* 908 F.2d 1262, 1266 (5th Cir.1990). It is "nothing more than a 'legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'" *Southwest Airlines v. Texas Int'l Airlines,* 546 F.2d 84, 95 (5th Cir.1977) (quoting Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27 (1964)); *see United States v. Manning Coal Corp.,* 977 F.2d 117, 121 (4th Cir.1992). Some courts have held that co-conspirators are in privity with each other for res judicata purposes. *McIver v. Jones,* 209 Ga.App. 670, 434 S.E.2d 504, 506 (1993); *Goel v. Heller,* 667 F.Supp. 144, 152 (D.N.J.1987). In this suit, Davenport's pleadings, as amplified by his memoranda and submissions to the court, allege, in effect, that Casteen—the University president—discharged and defamed Davenport without affording him due process and that Copeland—the University athletic director—conspired with Casteen to that end.[5] Under the circumstances, the court agrees with those courts that have found a sufficient identity of interests among co-conspirators to find that the privity requirement has been satisfied. Having found the privity requirement satisfied, Davenport's claims against Copeland

are, like Davenport's claims against Casteen, barred by res judicata.[6]

### III.

The court also finds that Davenport's termination implicates no property or liberty interests because he was employed and discharged by private foundations that lacked the essential purposes or nexus to satisfy the state action requirement of 42 U.S.C. § 1983, and also because Casteen and Copeland lacked the authority and the coercive power to terminate Davenport. Any defamatory statements by Casteen and Copeland made at the time of Davenport's discharge from private employment, therefore, did not infringe Davenport's liberty interest, and if actionable, were actionable under state law.

■ VSAF and Services Foundation are "private" foundations that were organized and exist pursuant to Virginia's corporation laws.[7] *See generally Jackson v. Statler Foundation,* 496 F.2d 623, 634 n. 17 (2d Cir.1974). Although they no doubt advance important interests, those interests are hardly those "traditionally the *exclusive* prerogative of the state." *See Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 454–55, 42 L.Ed.2d 477 (1974) (emphasis added by *Rendell–Baker* court)).

---

5. Davenport asserts that Casteen was "never sued" in his individual capacity. (Pl.Resp. in Opp'n to Mot. to Dismiss at 20.) That assertion is, at best, an egregious construction of the facts. In *Davenport v. VSAF,* No. 5129–L (Albemarle County Circuit Court, 1993), Davenport sought to recover $1,000,000 from Casteen and argued in response to Casteen's demurrer that Davenport's claims against Casteen *"in his personal capacity"* were proper and that Casteen was *"individually liable"* to Davenport. (Def.'s Ex. E at 7; Def.'s Ex. B at 2, (emphasis added))

6. Davenport also contends that he did not have a full and fair opportunity to litigate in state court because the Circuit Court dismissed his claims on demurrer, and there has been no judgment on the merits. Davenport confuses the rule. A state court of competent jurisdiction reviewed his allegations and found them to be legally deficient. The Virginia Supreme Court found no error in the Circuit Court's judgment. The Circuit Court's judgment is on the merits and is final. *See supra,* note 4.

Res judicata does not come into play only when a plaintiff survives a demurrer and subsequently suffers an adverse judgment. Presumptively, Davenport had a full and fair opportunity to litigate his claims. He simply lost. Moreover, Davenport was the master of his pleadings, as well as the selection of his forum. State courts have jurisdiction to hear actions pursuant to 42 U.S.C. § 1983. Davenport chose, however, to split his cause of action, and after having lost on the merits, he now seeks to resurrect his "cause of action" in this forum.

7. It has been suggested that use of the term "private" is not fully descriptive. *See Jackson v. Statler Foundation,* 496 F.2d 623, 627–28 n. 6 (2d Cir.1974). No matter how the term is used, the description of the foundations as "private" does not deflect the necessary inquiry—whether there is the requisite nexus with the state to meet the state action requirement of 42 U.S.C. § 1983.

The functions performed by the foundations, therefore, do not meet the "government function" standard that would transform their actions into "state action" for purposes of § 1983. *See United Auto Workers v. Gaston Festivals, Inc.,* 43 F.3d 902 (4th Cir.1995).

The overall relationship of the foundations to the state also fails to establish the required "nexus" to transform their actions into state action.[8] VSAF is a private, non-stock corporation governed by an independent board of trustees[9] and funded exclusively from private charitable contributions. Services Foundation is, likewise, a private, non-stock corporation with its own independent board. Although, in the words of Davenport's counsel, "the University acted as a [paying] agent for [the foundations] in paying his salary under his [employment] contract [with the foundations]," (Def.'s Ex. D at 19.), "the University never agreed to pay [Davenport] anything. All it agreed to do was to continue to be the paymaster." (Def.'s Ex. F at 33, 34.)[10] In the court's view, the performance of that single administrative function does not supply the nexus or interdependence essential to transform private employment into government employment. *See generally National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).

■ Relying primarily on *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), Davenport contends that because Casteen acted under color of law as president of the University when Casteen allegedly defamed him and because he lost employment in connection with the alleged defamation, he was deprived of a "liberty" interest. Although the court agrees that Casteen acted under color of state law when he allegedly defamed Davenport, the court rejects Davenport's conclusion that Casteen deprived him of a liberty interest.

When given the opportunity to clarify the holding of *Wisconsin v. Constantineau,* the Supreme Court unequivocally stated in *Paul v. Davis,* that it "has never held that the mere defamation of an individual ... was sufficient to invoke the guarantees of procedural due process *absent an accompanying loss of government employment.*" 424 U.S. 693, 706, 96 S.Ct. 1155, 1163, 47 L.Ed.2d 405 (1976) (emphasis added). As Davenport was not terminated from government employment, his liberty interests have not been infringed.

■ Moreover, even though Casteen was a "state actor" in his capacity as president of the University, and presumptuously "directed" the foundations to "initiate termination proceedings," Casteen had not even a semblance of authority to order Davenport's termination. Each of those foundations has a board with both the authority and the responsibility to make its own decisions, a fact recognized by Davenport in his earlier state proceedings:

> The Articles of Incorporation and the Bylaws of VSAF demonstrate that it is a separate, independent corporation. [Nothing] make[s] ... VSAF subservient to the will of [the University] president John Casteen. That VSAF may have jumped when Casteen snapped his fingers does not

8. Davenport clearly fails to establish that the foundations acted under color of state law by means of a symbiotic relationship or excessive regulation. The Supreme Court has limited the symbiotic relationship analysis as follows:

> We cautioned ... that while "a multitude of relationships might appear to some to fall within the [Fourteenth] Amendment's embrace," differences in circumstances beget differences in law, limiting the actual holding to lessees of public property.

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 358, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974) (quoting *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 726, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961)).

9. Casteen was not a member of the board of either foundation, but Davenport was an officer and *ex officio* member VSAF's Board, with full voting rights.

10. Counsel for Davenport stated:

> Virginia Student Aid Foundation is the institution for which Davenport labored and the institution that owed him a salary. therefore. The contract says he's to be paid $50,000 a year of the Virginia Aid Foundation's money. For convenience sake, it's funneled through the existing system.... It's not a relationship that came into existence by this contract but rather one that was existent....

(Def.'s Ex. F at 33, 34.)

mean that it had a legal obligation to do so.... Casteen directed an independent corporation to terminate one of its long term employees. The Board of the corporation apparently lacked the intestinal fortitude to question Mr. Casteen's right to tell them what to do.

(Def.'s Ex. D at 29, 30.) Thus, Davenport has only demonstrated that Casteen had sway with the Boards. But more than the practical ability to influence action is required. The state actor must possess and exercise coercive power. *See Watts–Means v. Prince George's Family Crisis Center,* 7 F.3d 40, 43 (4th Cir.1993) ("[T]he County, through its voting board member [on the board of a private organization], could not have controlled or coerced [the] decision because it had only one of twenty-one total votes on the board"). When a person acts without authority over an employment decision and without coercive power, his acts are not fairly attributable to the state.

## IV.

Even assuming that Davenport's termination implicated constitutionally protected property and liberty interests, it is clear that Davenport was afforded all the process he was due. Casteen's decision was not in haste. Davenport's termination followed a nearly year long investigation. Davenport was asked for his version of events, and he was afforded an opportunity to attend a hearing to respond to concerns raised by the investigation. Davenport chose not to attend and instead filed suit in state court on the day of his termination. Before filing his present suit, Davenport at no time asked for an additional hearing to clear his name. In fact, Davenport's refusal to attend the VSAF hearing and respond to concerns raised by

the investigation and his immediately filed state court action seem to have been designed to avoid the kind of confrontation and discourse he now alleges were necessary to protect his property and liberty interests.

### A. Property Interests

 Ordinarily, a public employee with a property interest in continued employment must, before termination, be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The pretermination hearing need not finally resolve the matter: "It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495. The process afforded Davenport satisfied the minimum requirements of due process and then some.

Although the University inquiry group and VSAF provided Davenport with several opportunities to "present his side of the story," Davenport asserts that those opportunities failed to satisfy due process. Specifically, Davenport has submitted his former counsel's affidavit that he was not given a "predetermination" opportunity to be heard, but was offered a "postdetermination formality" instead.[11] (Pickford Aff.Pl.'s Ex. C at 3.) Davenport confuses the requirements of due process. A pretermination (not predetermination) hearing must be provided.[12] It was.

 Davenport further argues that Casteen required VSAF to fire him, thus render-

---

11. The Pickford and Rhodes affidavits challenge the fairness and objectivity of the process leading to Davenport's termination. Rule 56 of the Federal Rules of Civil Procedure provides, however, that affidavits "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P. 56(e). The Pickford and Rhodes affidavits are so generously interspersed with hearsay and so lacking in foundation that they fail to satisfy even the minimal standards of Rule 56. They are, therefore, disregarded.

12. Davenport challenges the substance of the opportunity for a hearing provided to him by VSAF because, he asserts, VSAF had already decided to fire him. Davenport's perception of VSAF's intentions, without more, does not show that the opportunity presented was meaningless. Neither do vague recollections of "UVA or VSAF officials" predicting that Davenport would "have to go" show that the hearing was fatally flawed.

ing VSAF"s termination procedures meaningless. Even if Casteen, de facto, terminated Davenport, however, Davenport still received due process. Casteen's decision was informed by the respective investigations of the University inquiry group and VSAF, and both the University inquiry group and VSAF provided Davenport with an opportunity to correct false impressions and present his story.[13] Therefore, no matter how analyzed, Davenport received all the pretermination process he was due.

### B. Liberty Interests

 Due process is a flexible concept grounded in notions of fundamental fairness. *Walters v. Nat'l Ass'n of Radiation Survivors,* 473 U.S. 305, 320, 105 S.Ct. 3180, 3188–89, 87 L.Ed.2d 220 (1985). When the government discharges an employee and disseminates information that stigmatizes his good name, fairness dictates that the state afford him an opportunity to clear his name. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Davenport, however, filed suit the same day he was terminated, having failed to take advantage of the pretermination process afforded to him and without requesting a posttermination name clearing hearing. His conduct, therefore, made the very kind of process he claims he was due impractical, if not impossible.

 Under most circumstances, a plaintiff's failure to request a name clearing hearing should prevent him from complaining that one was not afforded. *See Howze v. City of Austin,* 917 F.2d 208 (5th Cir.1990);

*Freeman v. McKellar,* 795 F.Supp. 733 (E.D.Pa.1992). The circumstances of this case are even more compelling. Davenport's failure to request a hearing is preceded by his deliberate bypass of a pretermination hearing and succeeded by his immediate filing of suit in state court. If it was possible for Davenport to receive a name clearing hearing prior to filing suit, it became a practical impossibility once suit was filed. Fairness has two sides. It does not permit Davenport to complain of circumstances that were of his own making.[14]

### V.

For the reasons stated above, the court finds that res judicata bars this action; that Davenport's discharge from two private foundations implicates no property or liberty interests; and that, even if property or liberty interest were implicated, they were protected by the process afforded Davenport. Accordingly, the court will enter summary judgment for Casteen and Copeland.

---

13. Davenport failed to appear at the VSAF's scheduled hearing. "[W]hen [an] opportunity [to be heard] is granted a complainant, who chooses not to exercise it, that complainant cannot later plead a denial of procedural due process." *Satterfield v. Edenton–Chowan Bd. of Educ.,* 530 F.2d 567, 572 (4th Cir.1975).

14. Although Davenport's complaint alleges defamation, no actual statements made by Casteen or Copeland are detailed. Even in his most recent filings, Davenport has refrained from specifically identifying a false statement made about him. For instance, Davenport presents evidence of defamation through broad, general statements such as "many of the allegations Casteen made … were either flatly untrue or presented in a false and defamatory light," and "it was insinuat-

ed [by Casteen] that Ted Davenport had been caught embezzling." (Pickford Aff.Pl.'s Ex. C at 2.) Davenport further identifies the matters about which he was defamed, including taking a pay increase and receiving other funds. (Pl.'s Resp. to Mot. to Dismiss at 7.) However, Davenport provides no actual text of a statement made by Casteen or Copeland which is allegedly false. By *neglecting to identify* actual false statements, Davenport failed to show a deprivation of a liberty interest. *See Warren v. Crawford,* 927 F.2d 559, 565 (11th Cir.1991) (affirming district court's ruling that a plaintiff, claiming deprivation of a liberty interest, who failed to identify specific disputes with factual statements failed to show a genuine issue of fact for trial).