Joseph H.L. BOSTON, Appellant,

v.

Jack H. WEBB, City Manager of the City of Washington, North Carolina (official capacity); Johnny R. Rose, Chief of Police of the City of Washington, North Carolina (official capacity), Appellees.

No. 85–1078.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 9, 1985.

Decided Feb. 21, 1986.

Herman E. Gaskins, Jr. (Gaskins, McMullan & Gaskins, P.A., Washington, N.C., on brief), for appellant.

Richard T. Rice (Allan R. Gitter, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., James B. McMullan, Jr., McMullan & Knott, Washington, N.C., on brief), for appellees.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Following his discharge from employment as a police officer of the City of Washington, North Carolina, Boston sued the City Manager and the Chief of Police under 42 U.S.C. § 1983, claiming a denial by those officials of his procedural due process rights in connection with his discharge. He now appeals from the district court's grant of summary judgment in favor of the city official-defendants. We affirm.

I

Boston was a police officer of the City of Washington from April 1976 until July 15, 1983, when he was discharged. His employment, as a matter of state law, was at will. His discharge followed and was based upon allegations made to responsible city officials, beginning in late 1982, that Boston had been accepting bribes from drug dealers in return for information concerning law enforcement investigations. The charges were investigated over a period of some six months. The State Bureau of Investigation participated in it along with local officials. Boston was apprised of the charges and of the investigation early in its course, and was represented by privately retained counsel throughout the ensuing phases of the investigation. The city officials withheld action for several months following the first charge.

In March 1983, city officials received an official report that one Flynn had been tested by polygraph and found truthful with respect to a specific allegation that Flynn had seen Boston take $1,000 from a known or suspected drug dealer named Credle. The city officials still withheld action.

Following the receipt of additional information in late June 1983, that Boston was involved in some way with the drug community in the area, appellee Webb, the City Manager, directed appellee Rose, the Chief of Police, to take action in the matter in order to conclude it. In the follow-up to this directive, on July 8, 1983, Boston took a polygraph test, as had earlier been suggested by the local district attorney, respecting the incident reported by Flynn. On July 15, 1983, following a discussion of the polygraph test results by Webb and Rose, Rose notified Boston that he was terminated. This termination notice informed Boston of his right to a post-termination hearing before appellee Webb, the City Manager, in accordance with the City's code. In accordance with the code, Boston gave timely notice of appeal to the City Manager. A hearing was set for July 27, 1983.

Following discussions between Boston's counsel and the city attorney respecting the procedures to be followed in the hearing before Webb, Webb wrote Boston on July 21, 1983, outlining the procedures. This letter stated that the reasons for the termination would be presented by Rose, the Chief of Police. Following that, Boston would be given an opportunity to present his side of the matter. This letter was followed up a day later by a letter from the city attorney to Boston's counsel which confirmed the essentials of the procedure described by Webb, and stated that Boston would be given an opportunity to question Rose and to present evidence to refute any reasons given by Rose for his termination.

The hearing before Webb proceeded on July 27, 1983, in the form as outlined in the two letters. Present throughout were Webb, Rose, the city attorney, Boston, and Boston's attorney. Rose gave as the specific reason for the termination Boston's taking of a $1,000 bribe. Rose was then questioned, conceding that he had no personal knowledge of the alleged misconduct. Boston testified and denied any improprieties. Credle, the alleged giver of the $1,000 bribe, was presented by Boston and denied giving Boston money at any time. The hearing was recessed without a decision by Webb.

On August 2, 1983, Rose and Webb met with other local officials, including the State Bureau of Investigation official who had administered the polygraph test to Flynn. Flynn was present for what was termed by the local officials an "investigatory meeting." The obvious purpose of this meeting was to seek further verification of Flynn's account of the Credle bribe incident. Boston's counsel was made aware of this meeting and that Flynn would be present. He requested permission for Boston and himself to attend. He was advised by the city attorney that Boston could not attend and that though he was unsure about Boston's counsel's appearing, counsel might submit written questions to be put to Flynn. Boston's counsel declined to submit questions and was not further advised, nor did he apparently seek further advice, as to whether he might appear. At the August 2 meeting, the city officials questioned both Flynn and the state officer who had administered the polygraph test to Flynn. Flynn confirmed his allegation and the officer confirmed the polygraph test result of truthfulness. A tape recording (presumably supplied by Boston's counsel) ostensibly of Flynn's voice denying that he had ever made the charges of bribe-taking was played. Boston's counsel was sought out and brought to the meeting where he verified that the voice recorded was that of Flynn. Boston's counsel was not asked whether he wanted to question Flynn or the state polygraph officer, nor did he request that he be allowed to do so.

On August 5, 1983, Webb wrote Boston's counsel, giving a narrative summary of the evidence received at the August 2 meeting and scheduling a "second ... and final hearing" for August 12, 1983. The stated purpose of that hearing was "for you to rebut the above stated allegations." Boston's counsel then requested and was denied an opportunity to review the documentation of the polygraph examination of Flynn.

The "final hearing" was held as scheduled on August 12, 1983. Present throughout were Webb, Rose, the city attorney, Boston, and Boston's counsel. Neither Flynn nor the polygraph administrator were present, their presence having been requested neither by Boston nor the city officials. The hearing consisted solely of the presentation of evidence by Boston disclaiming any misconduct. No evidence was presented by the city officials. The hearing was recessed that day without any decision by Webb.

On August 16, 1983, following a meeting with the city council, Webb advised Boston that Rose's decision to terminate him was being upheld by Webb. In a press release, Webb stated that Boston had been observed receiving a large sum of money as a bribe, that the decision to terminate Boston was "made on the basis that Boston was warned of the allegations, given the opportunity to disprove the allegations, and was not able to do so."

Boston then brought this action under 42 U.S.C. § 1983 against Webb and Rose in their official capacities, seeking declaratory, injunctive, and monetary relief on the basis that their action had deprived him of constitutionally guaranteed procedural due process. The case was brought to issue on cross-motions for summary judgment, on an evidentiary record essentially as above summarized. A magistrate to whom the case was referred recommended the entry of summary judgment for Boston, concluding that on the undisputed facts, he had been denied procedural due process in connection with his termination. The district court, considering the case on defendants' objection to the magistrate's report, sustained the objections and, concluding to the contrary that there had been no denial of procedural due process, entered summary judgment for the city official defendants.

This appeal followed.

II

As the district court noted, the critical legal aspect of this case is that Boston concededly had no property interest in his continued employment. This meant that the only procedural due process owed him

was that constitutionally due one whose "good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (dictum). That process requires "notice and an opportunity to be heard," *id.*, specifically, "an opportunity to refute the charge before [government] officials," *id.*, in order "to clear his name," *id.* n. 12.

The question properly focused upon by the district court therefore was whether Boston had been accorded the minimum process required for protection of this special liberty interest recognized in *Roth.* As the district court necessarily recognized, that interest was surely implicated by the public announcement by city officials of the reasons for Boston's discharge.

■ We agree with the district court's conclusion that on the undisputed facts of record, Boston was accorded the process due him for protection of this particular interest.

First off, there is no dispute that Boston was scrupulously accorded notice of two hearings conducted specifically and for the stated purpose of allowing him to attempt to refute the charges against him and by that means to clear his name. The notice clearly identified the substance of the charges against him and advised him of the identity of those making the charge.

There is also no dispute that on two occasions Boston, after adequate notice, was given opportunities to refute the known charges "before the officials" considering them. He was allowed on both occasions to testify directly in refutation and to present corroborating witnesses while represented by obviously competent and diligent counsel. In the end, his efforts to refute and clear his name were unavailing, but that he was provided opportunities to do so is clear. Due process obviously does not require more than a fair opportunity.

Boston's actual claims of due process denial indeed focus only upon the lack of

fairness in the opportunities obviously provided. He claims four specific deficiencies: (1) that the appellee Webb was not an impartial decisionmaker; (2) that Boston was not allowed to confront and cross-examine his direct accusers, Flynn and the polygraph administrator; (3) that he was erroneously required to carry the burden of refutation, rather than having the burden to prove the charges placed on the city officials; and (4) that he was not provided a specific statement of the findings upon which the decision to terminate him was made.

The district court considered and properly rejected each of these contentions in a memorandum opinion whose basic reasoning on each point we approve. In summary, and with some supplementation of our own analysis:

■ (1) The due process requirement of an impartial tribunal is not violated simply because the ultimate decisionmaker was involved in an earlier stage of investigative or administrative proceedings, as was the appellee Webb here. Rather, there is a presumption that governmental officials can and will decide particular controversies conscientiously and fairly despite earlier involvement in their investigation. This presumption can only be overcome by demonstrations of "extrajudicial" bias stemming from other influences than the investigative involvement. *Withrow v. Larkin*, 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712 (1975); *Morris v. City of Danville*, 744 F.2d 1041 (4th Cir.1984).

Here there has been no suggestion of Webb's bias from any such extrajudicial source, and the presumption remains.

(2) While in some contexts and in respect of some constitutionally protected liberty or property interests, direct confrontation and the right to cross-examine one's accusers may be requisites of procedural due process, *see Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Satterfield v. Edenton-Chowan Board of Education*, 530 F.2d 567 (4th Cir.1975), in other contexts and in respect of other interests they may not be, *see Arnett v. Kenne-*

*dy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Rodgers v. Norfolk School Board,* 755 F.2d 59 (4th Cir.1985). Whether these are requisites of procedural due process in a given case depends upon a balancing of the particular individual interest involved against the countervailing state interests. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The right of cross-examination is therefore not an absolute in respect of all alleged deprivations of constitutionally protected property or liberty interests. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Goss v. Lopez,* 419 U.S. 565, 583, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975); *Wolff v. McDonnell,* 418 U.S. 539, 567–68, 94 S.Ct. 2963, 2980–81, 41 L.Ed.2d 935 (1974).

Here, the individual right was not a fundamental one of property in continued employment or other entitlement, nor of liberty from forced confinement or other physical restraint. It was solely that of being free from arbitrary restrictions upon the opportunity for other gainful employment stemming from the reasons voluntarily given by government for lawfully terminating Boston's at-will public employment. On the other hand, the state's interest was in being able expeditiously to terminate the employment of a public employee it had reasonable cause to believe was engaged in serious misconduct directly threatening to the morale and performance of his department, and to avoid in the process having its absolute right to terminate for any or no cause, *see Patterson v. Ramsey,* 552 F.2d 117, 118 (4th Cir.1977), converted into a full-blown adversarial inquiry into a cause it had voluntarily chosen to reveal in the interests of fairness.

▪ We agree with the district court that on balance, the procedural due process requirements of a fair opportunity to refute the reasons publicly given by government for Boston's termination did not include the right of cross-examination. Here Boston was given two opportunities to produce evidence to refute specific charges and particular accusers fully known to him.

There is of course no guarantee and no way to guarantee that such a decision as that made here is a correct one. Our inquiry is limited to whether in the balance of interests, cross-examination was essential to avoid an impermissible risk of an incorrect decision that Boston had not satisfactorily refuted the reasons for his termination. *See Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). We agree with the district court that cross-examination was not required here in view of the opportunity given and the nature of the interests involved. *See Rodgers v. Norfolk School Board,* 755 F.2d at 63–64; *Rosewitz v. Latting,* 689 F.2d 175, 177 (10th Cir.1982).

▪ (3) Boston's contention that he was unfairly required to carry the burden of refuting the charges is without merit. It mistakes the nature of the interest at issue and of the only constitutionally required basis for any hearing. The interest was not to remain employed unless cause could be shown—a property interest—but was merely to "clear his name" against unfounded charges. To require the city officials to prove cause would have been in effect to recognize a constitutionally protectible property interest which all parties agree did not exist.

▪ (4) The requirement noted in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that the reasons for a decision such as that here in issue should be made to appear by the decisionmaker was not violated here. The concern for fairness expressed in *Goldberg* was that the decision should be based upon—and demonstrably based upon—"legal rules and evidence." A statement of the basis for decision by the decisionmaker may be required to provide that demonstration, but it is not the only way this concern for fairness can be met and the possibility of sheer arbitrariness thereby avoided. The legal and factual basis for such a decision may be adequately supplied by giving notice of the specific grounds for proposed or completed adverse action in advance of a hearing specifically devoted to their considera-

tion. *Satterfield v. Edenton-Chowan Board of Education,* 530 F.2d 567, 576 (4th Cir.1975). That, as indicated, was clearly done here.

We therefore conclude, with the district court, that Boston was accorded the procedural process due him in connection with his termination by action of the appellee-city officials.

AFFIRMED.