848 F.2d 184
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James I. DAULTON, Plaintiff-Appellant,
v.
The CITY OF WINSTON-SALEM, INC., Joseph Masten and Bryson A.
Stuart, Defendants-Appellees.
 No. 87-2637.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 2, 1988.
 Decided: May 24, 1988.
 
 Fred G. Crumpler, Jr., Robin S. Boden (White & Crumpler, on brief), for appellant.
 Anthony H. Brett (Womble, Carlyle, Sandridge & Rice, on brief), for appellees.
 Before WILKINSON, Circuit Judge, and BUTZNER, Senior Circuit Judge, and THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal questions the district court's dismissal of an action in which the appellant claimed that appellees violated his due process rights when they demoted him from his position as a detective. We agree with the district court that appellant did not have a constitutionally protected property right in continued employment with the city of Winston-Salem and that the "name clearing hearing" which the district court ordered vindicated any liberty interest appellant possessed. We therefore affirm the district court's decision.
 
 I.
 
 2
 In August, 1984, appellant James I. Daulton was assigned to investigate the murder of Deborah Sykes under the direction of Forsyth County's district attorney. At that time, appellant had been a Winston-Salem police officer in good standing for nineteen and one-half years. The investigation led to the trial and conviction of one Darryl Hunt. Controversy subsequently developed over the investigation and trial, and the Winston-Salem Board of Aldermen initiated its own inquiry into the police department's handling of the case. The city manager, Bryson A. Stuart, was appointed to head the investigation. Chief of Police Joseph Masten also instituted an investigation of the Sykes case.
 
 
 3
 Shortly thereafter, appellant was asked to appear before Masten and was accused of misconduct during the murder investigation and trial. Masten informed appellant that he would be decertified and demoted from his position as a police officer. Subsequently, City Manager Stuart conducted a hearing on appellant's demotion and upheld the decision.
 
 
 4
 Appellant filed a 42 U.S.C. Sec. 1983 action in June, 1986, claiming that appellees had violated his Fourteenth Amendment due process rights in demoting him. Specifically, appellant alleged that the pre-demotion procedures were inadequate and that he had been denied an impartial tribunal to hear his appeal from the police chief's decision.
 
 
 5
 On a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the district court stated that the Complaint raised a question as to whether appellant had received a fair and impartial hearing before the City Manager. Accordingly, the court ordered Winston-Salem to provide appellant a hearing before an impartial hearing officer. Subsequently, the court appointed a hearing officer, who in turn reported his findings to the court. The court then issued an opinion in which it dismissed the action. According to the court, appellant did not have a constitutionally protected property interest in continued employment. Further, the court found that even assuming appellant possessed a liberty interest cognizable under the due process clause, he had not demonstrated that the proceedings before the police chief and the city manager were infected with extrajudicial bias. Moreover, the court concluded that any previous deprivation of a liberty interest without due process had been corrected because appellant had been given an opportunity to clear his name before a court-appointed hearing officer. Appellant had therefore failed to state a claim for violation of his due process rights.
 
 II.
 A.
 
 6
 Analysis of whether appellant enjoyed a constitutionally protected property interest in his employment as a detective must begin with the Supreme Court's decision in Board of Regents v. Roth, 408 U.S. 564 (1972). There, the Court stated that the Constitution guarantees procedural due process only for the deprivation of property interests which are protected by the Fourteenth Amendment. Id. at 569. The Constitution does not create property rights; such rights must be defined by reference to independent sources. Id. at 577; see also Bishop v. Wood, 426 U.S. 341, 344 (1976). In this case, appellant must show that North Carolina law creates an entitlement to continued employment. Bishop, 426 U.S. at 344; Roth, 408 U.S. at 577.
 
 
 7
 North Carolina courts adhere to the rule that employment is terminable at the will of either party, absent a contract establishing a definite term of employment. Harris v. Duke Power Co., 319 N.C. 627, 356 S.E.2d 357, 359 (1987); see also Guy v. Travenol Laboratories, Inc., 812 F.2d 911, 912-15 (4th Cir.1987) (discussing North Carolina employment at-will rule).[1] Appellant here does not contend that he had an express contractual right to employment for a specific duration. Rather, he argues that a police department manual containing, inter alia, the procedure for demoting employees, together with the department's rules of conduct, created an implied contract for demotion only for just cause and in accordance with the procedure specified in the manual.
 
 
 8
 Even assuming the North Carolina Supreme Court would hold that a unilaterally promulgated employee manual can create contractually binding obligations, appellant has not alleged any facts indicating (i) that the manual or rules of conduct contained an express guarantee of demotion only for just cause, (ii) that appellant relied on the department's personnel policies in accepting or continuing his employment or (iii) that the provisions of the manual or rules of conduct were expressly incorporated in his employment contract. See Pittman v. Wilson County, 839 F.2d 225, 227 n. 5 (4th Cir.1988); Harris v. Duke Power Co., 319 N.C. 627, 356 S.E.2d 357, 360 (1987); Trought v. Richardson, 78 N.C.App. 758, 338 S.E.2d 617, 618, 619-20, review denied, 316 N.C. 557, 344 S.E.2d 18 (1986); Walker v. Westinghouse Elec. Corp., 77 N.C.App. 253, 335 S.E.2d 79, 84 (1985), review denied, 315 N.C. 597, 341 S.E.2d 39 (1986). Moreover, the controlling state statute and city ordinance make unmistakably clear that appellant was an at-will employee. Under North Carolina law, the city manager, as chief administrator, has the power to appoint, suspend and remove all employees in accordance with local ordinances. N.C.Gen.Stat. Sec. 160A-148(1). In turn, Winston-Salem Code Sec. 16-2(a) provides that all patrolmen "hold office at the pleasure of the city manager." The terms of the police department manual and rules of conduct are insufficient to overcome the presumption of at-will employment embodied in the local ordinance and the state's common law. Therefore, appellant did not have a constitutionally protected property interest in continued employment as a detective with the Winston-Salem police department.
 
 B.
 
 9
 The Supreme Court has held that when the state, in the course of taking adverse employment actions, makes charges that might seriously damage a person's " 'good name, reputation, honor, or integrity,' " the state must afford that person an opportunity to clear his name. Board of Regents v. Roth, 408 U.S. 564, 573 & n. 12 (1972) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)); see also Codd v. Velger, 429 U.S. 624, 627 (1977). Appellant was given a hearing before the chief of police and, on appeal, before the city manager. The district court ordered a third hearing before a master. After examining the transcripts of all three hearings, the court found that the city's hearings were not tainted by extrajudicial bias, see Withrow v. Larkin, 421 U.S. 35, 55 (1975); Boston v. Webb, 783 F.2d 1163, 1166 (4th Cir.1986), and that, even if they were, the third hearing cured any constitutional violation because it gave appellant the opportunity to clear his name.
 
 
 10
 We cannot accept the conclusion that even if the city's hearings were not conducted properly, the court-ordered hearing remedied any constitutional defects. Appellant's suit was based on an alleged constitutional violation committed by the city and sought money damages, relief he was entitled to receive under section 1983 if he proved his allegations. We would, in effect, be immunizing the city from liability for those damages if we were to allow the court-ordered hearing to cure any shortcomings in the city's hearings. Therefore, the court's statement that the third hearing repaired any constitutional violation that the city committed was erroneous.[2] It was not reversible error, however, because the court also found after examining the transcript of all three hearings that the city's hearings were not tainted by extrajudicial bias. This finding is not clearly erroneous. Therefore, because the city's hearings were not tainted, the city met the requirements of Roth and Withrow and gave appellant all of the opportunities to clear his name to which he was constitutionally entitled.[3]
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 The North Carolina courts have recognized exceptions to this rule in cases in which an employee is discharged for engaging in protected activity or furnishes additional consideration for employment. Harris v. Duke Power Co., 319 N.C. 627, 356 S.E.2d 357, 359 (1987). These exceptions are not relevant here
 
 
 [2]
 As the Supreme Court has cautioned, masters should be used only in exceptional cases. See La Buy v. Howes Leather Co., 352 U.S. 249, 256-59 (1957); see also Fed.R.Civ.P. 53(b)
 
 
 [3]
 Given the dismissal of the federal constitutional claims, the district court was correct in dismissing appellant's pendent state causes of action. United Mine Workers of Am. v. Gibb, 383 U.S. 715, 726 (1966)