918 F.2d 955
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald L. DUNN, Plaintiff-Appellant,
v.
The TOWN OF EMERALD ISLE, a Municipal Corporation, G. Wade
Horne, Mark D. Wilson, William A. Hargett, Jr., Brad Hewitt,
James B. Conder, Lenora S. Heverly, A.B. Crew, Peter Leo,
Benjamin A. Byland, Beulah M. Pase, Walter Gaskins,
Defendants-Appellees.
 No. 89-1829.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1990.
Decided Nov. 26, 1990.
As Amended Dec. 6, 1990.
 
 1
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Malcolm J. Howard, District Judge. (CA-88-118-4-CIV)
 
 
 2
 Franklin Don Pope, Jacksonville, N.C., for appellant.
 
 
 3
 James Redfern Morgan, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C. (Argued), Allen R. Gitter, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., Richard L. Stanley, Stanley & Simpson, Beaufort, N.C., on brief, for appellees.
 
 
 4
 E.D.N.C., 722 F.Supp. 1309.
 
 
 5
 AFFIRMED.
 
 
 6
 Before DONALD RUSSELL and MURNAGHAN, Circuit Judges, and MARVIN J. GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 
 MARVIN J. GARBIS, District Judge:
 
 7
 Ronald L. Dunn appeals the order of the district court granting summary judgment in favor of defendants and against him on his three original claims: (1) that he was deprived of due process protection with respect to his liberty and property interests; (2) that he was defamed in several statements rendered by the defendants; and (3) that he suffered emotional distress intentionally inflicted by the defendants.
 
 
 8
 On these respective claims, we find that the district court correctly entered summary judgment in favor of defendants for the following reasons: (1) no liberty interest was implicated in these set of facts; (2) Dunn's libel claim is barred by the one-year statute of limitations embodied in N.C.Gen.Stat. Sec. 1-54(3); (3) the defendants' conduct was not sufficiently outrageous as a matter of law to support a claim for intentional infliction of emotional distress. Accordingly, we affirm.
 
 I.
 
 9
 Dunn was initially hired by the Town of Emerald Isle, North Carolina, on April 10, 1983, and served with the Police Department until he resigned on April 23, 1987. At no point during his tenure with the Emerald Isle Police Department did he have either a written contract or a specified term of employment.
 
 
 10
 During the first years of his association with the department, Dunn was promoted to acting shift supervisor and later to sergeant. Dunn alleges that after defendant Mark Wilson became Chief of Police in 1985, Dunn began to encounter the difficulties which ultimately gave rise to his resignation and, subsequently, this lawsuit.
 
 
 11
 On December 2, 1985, defendant Police Chief Mark Wilson issued a written reprimand to plaintiff, chastising him for the manner in which he had counselled a subordinate who arrived late for a tour of duty. Dunn requested and received a grievance hearing before the Board of Commissioners in January of 1986, and the Board upheld the disciplinary action.
 
 
 12
 On February 27, 1986, the Town Administrator of Emerald Isle, defendant G. Wade Horne, dismissed Dunn from the Emerald Isle Police Department. Dunn appealed, requesting another grievance hearing before the Board of Commissioners in April of 1986. The Board convened and reinstated Dunn, finding that defendants Wilson and Horne had not strictly complied with the town's personnel policy procedures for dismissal.
 
 
 13
 On May 21, 1986, Horne dismissed Dunn a second time, and Dunn (through his attorney) again requested a grievance hearing before the Board. A hearing was convened on June 17, 1986, and lasted approximately five days. The Board determined that the defendants' allegations regarding Dunn were insufficient to warrant dismissal, and the Board reinstated Dunn yet a second time. However, the Board went on to find that Dunn's misconduct warranted a severe reprimand, and held that any further transgressions by Dunn would justify his immediate dismissal. The Board documented its findings in a report dated July 8, 1986,[1] and it is the subsequent release of this report to the local media (allegedly by the defendants) which forms the basis of Dunn's due process claims.
 
 
 14
 Following Dunn's second reinstatement in July 1986, he returned to duty with the Emerald Isle Police Department. During the next nine months Dunn was allegedly subjected to a pattern of conduct on the part of the defendants which was designed to pressure Dunn to resign. Specifically, Dunn testified at trial that the defendants (or other members of the department at their direction) followed vehicles operated by Dunn or members of his family; ran license plate checks on vehicles belonging to friends visiting the Dunn family; assigned Dunn to permanent beach patrol which served to isolate him from his co-workers; and repeatedly and unfairly criticized Dunn's performance in a performance report and in several disciplinary warnings issued to Dunn in late 1986 and early 1987.
 
 
 15
 Thereafter, Dunn decided to resign from the Emerald Isle Police Department and accept a lower paying position with the Indian Beach Police Department in April of 1987. Dunn filed suit in October of 1988. In an order filed in October of 1989, the district court granted defendants' motion for summary judgment on all of plaintiff's claims. Dunn now appeals that order.
 
 II.
 
 16
 The first issue raised by Dunn on appeal is whether his due process rights under the fourteenth amendment were violated by the release of the Commissioners' July 8th report to members of the local media. "[I]n order to claim entitlement to the protection of the due process clause ... [Dunn] must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action'." Johnson v. Morris, 903 F.2d 996, 999 (4th Cir.1990) (quoting Stone v. University of Maryland System Corp., 855 F.2d 167, 172 (4th Cir.1988)).
 
 
 17
 Dunn advances two lines of argument regarding due process violations. First, he argues that he had a liberty interest in "his standing and association in the community," and in being free from "stigma or disability that foreclose[s] his freedom to take advantage of other employment opportunities." Board of Regents v. Roth, 408 U.S. 564, 573 (1972). In addition to a liberty interest in his good name and future employment opportunities, Dunn also asserts that he had a property interest in his status as permanent employee with the Emerald Isle Department. Dunn argues that the defendants' action in publishing the Board's findings deprived him of both procedural and substantive due process with respect to his liberty interest in his reputation in the community, his chances for future employment, and with respect to his property interest in his status as a permanent employee. We will address each argument in turn.
 
 
 18
 1. Liberty Interest: Reputation and Future Employment Opportunities
 
 
 19
 The district court granted summary judgment in favor of the defendants on Dunn's claim that he was a deprived of a liberty interest in his reputation, holding that Dunn had failed "to identify the deprivation of any right implicit in the concept of ordered liberty and thereby failed to state a claim." In dismissing Dunn's liberty interest claim, the district court cited several reasons. First, the trial court relied on Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 172-73 n. 5 (4th Cir.1988), in which the court stated that "a public employer's stigmatizing remarks do not deprive an employee of a liberty interest unless they are made in the course of a discharge or significant demotion." Id. Because the press release of the Board's report was issued in conjunction with Dunn's reinstatement and not a dismissal or demotion, the district court found that the press release did not affect a liberty interest.
 
 
 20
 Second, the district court held that the Board's findings did not significantly affect Dunn's liberty interest in his reputation, because the report did not allege dishonesty, immorality or other serious character defects. Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir.1982). Finally, the court noted that Dunn had not established an injury to his future employment opportunities since he was hired by the Indian Beach Police Department following his resignation in April 1987.
 
 
 21
 On appeal Dunn contends that the discharge or significant demotion requirement relied upon by the district court does not apply to situations where plaintiffs do not allege that they were dismissed in conjunction with the public employer's stigmatizing remarks. Dunn's argument misses the point. Plaintiff has no constitutionally protected interest in his reputation separate and apart from a constitutionally protected property right to present or future employment.
 
 
 22
 Admittedly, the law addressing the question of whether an individual has a protected liberty interest in his reputation is somewhat confusing. In Board of Regents v. Roth, 408 U.S. at 573, the United States Supreme Court held that " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' " Id., citing Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." Id. at 573 n. 12.
 
 
 23
 However, in Paul v. Davis, 424 U.S. 693 (1976), the Court further clarified its holding in Board of Regents, supra, and more specifically, the meaning of the language cited above. In Paul, the Court explained that defamation or injury to reputation, absent an injury to some other right or status previously recognized by state law, does not deprive a plaintiff of any "liberty" interest protected by the Fourteenth Amendment. 424 U.S. at 708. Indeed, the Court characterized an individual's interest in reputation as "simply one of a number [of interests] which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." Id. at 712.
 
 
 24
 However, the Court explained, when defamation occurs in conjunction with the denial of some other right or status previously recognized under state law--for example, termination of employment or demotion--it is the denial of that right or status which triggers due process requirements, and not the defamation. "It is this alteration, officially removing the interest from the recognition and protection previously afforded the State, which we [find] sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment." Id. at 711. Apart from the due process accorded those previously recognized rights or interests, the Court held, an individual's interest in his or her reputation is not constitutionally protected. Id. Harm or injury to reputation alone, even where inflicted by a state officer, does not deprive an individual of any liberty or property interest recognized by state or federal law. Id. at 712.
 
 
 25
 Opinions subsequent to Paul have thus limited recovery for an injury to reputation to instances where stigmatizing remarks made in conjunction with a dismissal have foreclosed plaintiff's future opportunities for employment. See Learned v. Bellevue, 860 F.2d 928, 933 (9th Cir.1988); Danno v. Peterson, 421 F.Supp. 950 (N.D.Ill.1976) (no liberty interest where stigmatizing remarks were made in conjunction with mere reclassification of employee). Courts have recognized that when the government releases its reasons for dismissing an employee, such publication may endanger an employee's opportunity for future employment. Accordingly, due process protection attaches to the employee's interest in future employment, but not to the plaintiff's interest in his or her reputation alone.
 
 
 26
 The question of whether Dunn has a liberty or property interest, either in future employment opportunities or in some employment status previously recognized by state law, will be discussed in the following sections. However, with respect to Dunn's claim to a liberty interest in his reputation, we find that separate and apart from any other constitutionally protected interests, Dunn's interest in his reputation is not granted any constitutional due process protection. Thus defendants' conduct does not violate Dunn's procedural or substantive due process rights under the fourteenth amendment.
 
 
 27
 2. Liberty Interest: Future Employment Opportunities
 
 
 28
 Plaintiff may in fact have a liberty interest in "being free from arbitrary restrictions upon the opportunity for other gainful employment stemming from the reasons voluntarily given by government for lawfully terminating ... at-will public employment." Boston v. Webb, 783 F.2d 1163, 1166 (4th Cir.1986). If so, the interest protected is not to remain employed, but instead to "clear [one's] name against unfounded charges," which will theoretically restore plaintiff's interest in future employment. See id.
 
 
 29
 However, we agree with the district court's finding that Dunn has not proved that the release of the Board of Commissioners' findings arbitrarily foreclosed Dunn's future employment opportunities. In fact, as the district court noted, Dunn was hired by the Indian Beach Police Department soon after the statements in question were released.
 
 
 30
 Furthermore, the Board's findings do not constitute, as a matter of law, the type of statements that could jeopardize future employment opportunities. Indeed, the Board explicitly stated that Dunn's misconduct was not substantial enough or serious enough to warrant dismissal. Moreover, as the district court noted, charges which do not include allegations of serious character defects such as dishonesty or immorality as a matter of law do not foreclose future employment opportunities. See Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir.1982); Sigmon v. Poe, 564 F.2d 1093, 1096 (4th Cir.1977). The Board's report alleged that Dunn had failed to perform required duties, had demonstrated a lack of cooperation and discourteous treatment towards others, and had displayed an insubordinate attitude. Because those comments do not allege serious character defects, we find as a matter of law that defendants' release of the Board's findings did not jeopardize Dunn's future employment opportunities.
 
 
 31
 3. Property Interest: Continued Employment or Status as Permanent Employee
 
 
 32
 Dunn also advances two arguments pertaining to property rights in continued employment. First, Dunn argues that his public reprimand, which provided for his immediate dismissal on the occurrence of any further transgression, was substantially equivalent to a demotion and thus defendants' behavior deprived him of a constitutionally protected interest in continued employment.
 
 
 33
 Alternatively, Dunn argues that even if not equivalent to a demotion, the public reprimand at least served to alter his status from permanent employee to at-will employee, and that his interest in his status as permanent employee is a constitutionally protected property right. In essence, Dunn maintains that he enjoyed the status of a permanent employee prior to the entry of the severe reprimand, pursuant to an Emerald Isle Personnel Policy. However, the severe reprimand either served to demote Dunn, or effectively converted him into an at-will employee. Dunn contends that because his employment is protected by state law, either the change in status or the "demotion" amounts to a deprivation of a property right if not accompanied by due process procedural protections. Because both arguments turn on the question of whether for purposes of constitutional analysis Dunn was a permanent employee, we will respond to both arguments in the following discussion.
 
 
 34
 "Property interests are not created by the Constitution" but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure benefits and support claims of entitlement to those benefits." Board of Regents, supra, 408 U.S. at 577. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it, [h]e must, instead, have a legitimate claim of entitlement to it." Id. In evaluating the sufficiency of a person's claim of entitlement, the decision must be made by reference to state law. Bishop v. Wood, 426 U.S. 341, 344 (1976). In North Carolina, the assertion of a legitimate claim to a property interest in continued employment must be based on either a contract, a state statute, or a local ordinance. Nance v. Employment Sec. Comm'n, 290 N.C. 473, 226 S.E.2d 340 (1976).
 
 
 35
 In support of his argument that he was a permanent employee prior to the entry of the severe reprimand, Dunn does not rely on a contract, state statute or local ordinance. Instead, he maintains that his property right to continued employment, or to his status as a permanent employee, arose out of a personnel policy adopted by the Board of Commissioners of Emerald Isle, a policy which Dunn contends was enacted with the formality of an ordinance.
 
 
 36
 In making this argument, Dunn relies on our discussion in Pittman v. Wilson County, 839 F.2d 225 (4th Cir.1988), where we concluded that a resolution could support the creation of a property right to continued employment only if the resolution in question was passed with the formality of an ordinance. Id. at 229.
 
 
 37
 Dunn contends that the Emerald Isle Personnel Policy was adopted by the Board of Commissioners with the requisite formality of an ordinance, giving rise to his property right to continued employment as a permanent employee. The district court disagreed, however, holding that Dunn had not offered any evidence that the personnel policy was adopted with the requisite formality. Consequently, the district court held that under Pittman the personnel policy could not support Dunn's claim to a property right in continued employment or in his status as permanent employee.
 
 
 38
 We agree that Dunn has failed to cite any evidence which proves that the personnel policy was adopted with the same formality as an ordinance, and thus entitled Dunn to a property right in his status as permanent employee. As a result, we agree with the district court that, for purposes of constitutional analysis, Dunn was merely an at-will employee. Thus, even if Dunn's public reprimand qualified as a demotion, or served to convert Dunn's personnel policy status from permanent employee to at-will employee, Dunn had no constitutionally protected right to continued employment or status as a permanent employee. Accordingly, he was not constitutionally entitled to due process protection by virtue of defendants' actions, even if the reprimand were the equivalent of a demotion or change in status.
 
 
 39
 More importantly, the district court also noted that even if Dunn had been entitled to due process protection in connection with his reprimand, he had in fact been afforded due process, namely the opportunity for a hearing on the issue of his reprimand.[2] "It is undisputed, however, that the plaintiff never requested any hearing to address these charges. Procedural due process is the opportunity to be heard, and 'when this opportunity is granted a complainant, who chooses not to exercise it, that complainant cannot later plead a denial of due process.' " District court decision at 4 (citing Satterfield v. Edenton-Chowan Bd. of Educ., 530 F.2d 567, 572 (4th Cir.1975)). Plaintiff admits in his deposition that he chose not to file another grievance against the Board, although he could have. App. at 128-30. Thus, even if we were persuaded that Dunn had been deprived of his employment as a permanent employee, we find that he was accorded the opportunity for a hearing consistent with his rights of due process under the fourteenth amendment.
 
 
 40
 Therefore, in accordance with the foregoing reasons, we conclude that the district court correctly granted summary judgment in favor of the defendants on Dunn's deprivation of substantive and procedural due process claims, and affirm.
 
 III.
 
 41
 Dunn also maintains that the district court erred in granting summary judgment in favor of the defendants on Dunn's defamation claim. The district court found that Dunn's cause of action was barred by the one-year statute of limitations for "libel and slander" embodied in N.C.Gen.Stat. Sec. 1-54(3) (19__).[3]
 
 
 42
 On appeal, Dunn argues that the more liberal statute of limitations set forth in N.C.Gen.Stat. Sec. 1-52(13) (1976), which relates to claims where an individual sues a public official for trespass, applies in the present circumstances. Section 1-52(13) provides for a three-year statute of limitations where an individual has alleged that a public official committed a trespass under the color of state law. In this case, Dunn contends that the word "trespass" should be read expansively so as to include the defamatory statements rendered by the defendants in their official capacities as members of the Emerald Isle Police Department.
 
 
 43
 The facts underlying Dunn's defamation claim are as follows. Dunn alleges that he was defamed in several statements rendered by defendants Wilson, Horne, Hewitt, the Board and Conder. The parties do not dispute that the statements were made in 1985 and 1986. Since Dunn's complaint was not filed until October 26, 1988, there can be no question that all of the statements occurred more than one year prior to the filing of Dunn's lawsuit. The only issue is whether Dunn's defamation claim is governed by Sec. 1-54(3)'s one-year statute of limitations (for libel and slander), or the three-year statute of limitations in Sec. 1-52(13) (for trespass by a public official under color of his office).
 
 
 44
 As appellees point out in their brief, state law interpretations by federal judges who are "skilled in the law of particular states" should be overruled only if they are "unreasonable." Propper v. Clark, 337 U.S. 472, 486-87 (1949). However, the application of this deferential standard of review is rendered somewhat more difficult by the cursory treatment given the issue by the court below.
 
 
 45
 In disposing of the defamation claim on summary judgment, the district court held that plaintiff's defamation claim was governed by Sec. 1-54(3)'s one-year statute of limitations, relying solely upon the Court of Appeals of North Carolina's decision in Jones v. City of Greensboro, 51 N.C.App. 571, 277 S.E.2d 562 (1981). It is true, as Dunn argues, that the underlying facts and the suit filed in Jones predate N.C.Gen.Stat. Sec. 1-52(13).[4] Thus Dunn is correct in arguing that Jones is not dispositive on the statute of limitations issue.
 
 
 46
 However, case law interpreting the meaning of the word "trespass" as it is used in Sec. 1-52(13) does exist. The meaning of the term trespass as it was used in an older version of Gen.Stat. Sec. 1-52(13) was considered by the North Carolina Supreme Court in Brown v. Walker, 182 N.C. 52, 123 S.E. 633 (1924). The older version, N.C.Cons.Stat. Sec. 443, Subsection 1, was formerly a part of Gen.Stat. Sec. 1-54, and imposed a one-year limit on claims of trespass by a public official under the color of state law, in constrast to the current three-year limit. In holding that the term trespass as used in the statute did not include the act of misappropriating public money, the Brown court stated that:
 
 
 47
 in its more general sense a trespass is sometimes said to include any wrongful invasion of the rights of another; but in its more natural and usual meaning it is properly restricted to unlawful acts done to the person or property of another by violence or force direct or imputed.
 
 
 48
 123 S.E. at 636.
 
 
 49
 We find the definition of trespass as expressed in Brown to be controlling. Dunn does not present any evidence that when the North Carolina legislature extended the relevant statute of limitations from one year to three years, it intended to expand the meaning of trespass beyond the interpretation in Brown.
 
 
 50
 In this case, Dunn's claims against the respondents do not fit within the meaning of the term trespass as defined in Brown. Dunn does not allege violence or force on the part of the defendants, and libel is certainly not a claim which traditionally involves violence or force. Accordingly, we find that the trial court was correct in applying the more specific one-year statute of limitations for libel actions set forth in Sec. 1-54(3), and its decision to grant summary judgment in favor of the defendants on Dunn's defamation claim is affirmed.
 
 IV.
 
 51
 Dunn's final contention on appeal is that the trial court erred in granting summary judgment in favor of the defendants on Dunn's claim for intentional infliction of emotional distress.
 
 
 52
 The Second Restatement defines the tort of intentional infliction of emotional distress as follows:
 
 
 53
 One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
 
 
 54
 Restatement (Second) of Torts Sec. 46 (1965). The Supreme Court of North Carolina has recognized the tort of intentional infliction of emotional distress, and has indicated that liability will arise only where "a defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind.' " Stanbach v. Stanbach, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quoting Prosser, The Law of Torts, Sec. 12, p. 56 (4th Ed.1971)).
 
 
 55
 In recognizing the tort of intentional infliction of emotional distress, the Supreme Court of North Carolina has identified three elements that constitute a cause of action. To prevail, plaintiff must demonstrate (1) extreme and outrageous conduct on the part of the defendant, (2) which is intended to cause and does cause (3) severe emotional distress on the part of the plaintiff.[5] Dickens v. Puryear, 302 N.C. 437, 276 S.E.2d 325, 335 (1981).
 
 
 56
 In granting summary judgment in favor of the defendants, the trial court held that Dunn's claim failed as a matter of law "because the alleged acts of the defendants, even if true, [were] not sufficiently extreme and outrageous to satisfy North Carolina law," and because the plaintiff did not allege or establish "any emotional harm, much less the severe emotional harm that [the] tort requires." In response, Dunn argues that the evidence demonstrates sufficiently outrageous conduct as a matter of law to at least entitle him to a jury determination on whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability.
 
 
 57
 A brief examination of North Carolina case law in this area confirms that a plaintiff will not easily survive summary judgment on the question of whether as a matter of law defendant's conduct was sufficiently outrageous to take to the jury the issue of ultimate liability. For example, in Dickens, plaintiff's claim for intentional infliction of emotional distress was sufficient to withstand a motion for summary judgment when his claim was premised on defendant's threat to the plaintiff of death in the future unless he went home, pulled his telephone off the wall, packed his clothes and left the state. Dickens, supra, 276 S.E.2d at 336.
 
 
 58
 Similarly, a female plaintiff in Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 340 S.E.2d 116 (1986), successfully appealed summary judgment against her claim that a male supervisor made sexually suggestive remarks, sexually fondled plaintiff and when rebuffed screamed profane names at plaintiff, threatened her with bodily injury, and on one occasion, advanced towards her with a knife and slammed it down on a table in front of her.
 
 
 59
 However, the severity of the conduct in Dickens and Hogan can readily be contrasted to situations where the defendant's actions have not been found to be sufficiently outrageous to withstand a challenge to a claim of intentional infliction of emotional distress at the summary judgment stage. For example, in Hogan, the remaining two plaintiffs were unsuccessful in their efforts to appeal summary judgment. One plaintiff alleged that a defendant had screamed and shouted at her, had interfered with her supervision of waitresses under her charge and on one occasion had thrown menus at her. The other plaintiff claimed that defendants had denied her a pregnancy leave of absence, had forced her to carry heavy objects, cursed at her on one occasion, and had fired her when she left work to go to the hospital without permission from the defendant. Hogan, supra, 340 S.E.2d at 123. In affirming summary judgment in favor of the defendants, the Hogan court held that neither plaintiff had alleged conduct which as a matter of law could reasonably be regarded as so extreme and outrageous as to give rise to a claim for intentional infliction of emotional distress.
 
 
 60
 In the instant appeal Dunn points to a series of acts on the part of the defendants which he claims are sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.[6] However, even if this Court assumes the truth of the appellant's allegations, it is clear that the defendants' conduct, while certainly not laudatory, cannot reasonably be found by a jury to be sufficiently extreme and outrageous as to support a claim for intentional infliction of emotional distress under North Carolina law. Comparatively, we find that the acts which Dunn alleges more closely resemble those facts which courts have found legally insufficient to support a claim of intentional infliction of emotional distress. Consequently, we find that the district court's decision to grant summary judgment in favor of the defendants on Dunn's claim for intentional infliction of emotional distress was correct, and we affirm.
 
 V.
 
 61
 In summary, we find that the defendants were entitled to summary judgment on each of Dunn's claims. Therefore, the judgment of the district court granting summary judgment in favor of the defendants is affirmed.
 
 
 62
 AFFIRMED.
 
 
 
 [1]
 The document is produced in its entirety at pages 228-31 of the parties' Joint Appendix
 
 
 [2]
 Two previous hearings had been held before the grievance board on the issue of Dunn's dismissal. In fact, it was the public release of the report issued by the second Board meeting which gave rise to this litigation. Despite the fact that Dunn had requested a hearing each time he had been dismissed, Dunn did not request a hearing on the subject of his reprimand
 
 
 [3]
 Section 1-54(3) provides that an action for libel or slander must be commenced within one year
 
 
 [4]
 The actions underlying the plaintiff's claim in Jones occurred in 1974 and the suit was filed in 1975. Section 1-52(13) did not become effective until January 1, 1976
 
 
 [5]
 The tort will also lie where the defendant's actions reflect "a reckless indifference to the likelihood that they will cause severe emotional distress."
 
 
 [6]
 Dunn has alleged that he was disciplined for minor infractions and in a disparate fashion; that he was denied an advanced law enforcement certificate to which he was rightfully entitled; that motor vehicles operated by the appellant and members of his family were followed by representatives of the Emerald Isle Police Department as per the instructions of the defendants; that vehicles belonging to acquaintances of the appellant and his family were subjected to license plate checks while parked at appellant's home; that the defendants solicited unfavorable written statements concerning the appellant from his fellow officers; and that the defendants generally harassed the appellant in the performance of his duties by isolating appellant from his peers and assigning him to unfavorable duty for an indefinite period. Appellant's Br. at 21-22