936 F.2d 583
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
William L. MARCY, Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION, Respondent.
 No. 90-9506.
 United States Court of Appeals, Tenth Circuit.
 June 26, 1991.
 
 Before McKAY, SETH and SEYMOUR, Circuit Judges.
 ORDER AND JUDGMENT*
 SEYMOUR, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner William L. Marcy appeals the Federal Aviation Administration (FAA) decision not to renew his certificate of authority (COA) to act as a designated engineering representative (DER) on behalf of the FAA. Pursuant to 49 U.S.C. app. Sec. 1355(a),[1] the FAA is authorized to designate properly qualified persons in the private sector to act as structural engineering representatives of the FAA for the purpose of examining and approving certain aircraft engineering data. See also 14 C.F.R. Sec. 183.1; FAA Order 8110.37(5)(b).
 
 
 3
 The COA, issued to a DER, is renewable yearly, "unless sooner terminated ... (4) Upon a finding by the Administration that the representative has not properly performed his duties under the designation; ... or (6) For any reason the Administration considers appropriate." 14 C.F.R. Sec. 183.15(c), (d)(4) and (6). Except for the year 1985, petitioner's certificate as a DER was renewed yearly from 1975 until he was denied renewal in January, 1989.
 
 FACTS
 
 4
 By letter dated December 21, 1988, petitioner was notified by Michael Borfitz (Borfitz), Supervisor of the Denver Aircraft Certification Field Office (ACFO), that his status as a DER was under investigation and his COA might not be renewed for 1989. R. Tab 5 at 1-2. In this letter, Borfitz indicated that petitioner could request a meeting regarding this investigation. Petitioner immediately availed himself of this offer, and met with Borfitz on December 22, 1988. No record of this meeting was made.
 
 
 5
 On January 31, 1989, petitioner applied for renewal of his COA. On the same date, Borfitz notified petitioner by letter of seven specific areas of concern regarding petitioner's performance and attitude which precluded his renewal. The investigation centered on two main incidents wherein petitioner allegedly exceeded the bounds of his authority. Surrounding these incidents were allegations of argumentative and uncooperative behavior on the part of petitioner. Petitioner was asked to respond to these allegations in writing. R. Tab. 5 at 1.
 
 
 6
 Petitioner supplied Borfitz with a thirteen-page letter addressing each ground in detail. On June 19, 1989, Borfitz notified petitioner that he had reviewed his response and concluded that his COA should not be renewed. In this same communique, petitioner was advised of his right to appeal the decision to Borfitz either orally or in writing. Borfitz stated that an oral appeal would be recorded. R. Tab 10 at 5. Petitioner submitted a written appeal to Borfitz which was denied by letter dated September 27, 1989. At this time, Borfitz informed petitioner that pursuant to FAA procedures, he could appeal this decision to Leroy Keith, Manager, Transport Airplane Directorate, in Seattle, Washington (Keith). Borfitz again advised petitioner that this appeal to Keith could be either written or oral, but if he wished to make an oral appeal, he was required to give Keith three days advance notice so that arrangements for recording the meeting could be made. R. Tab 15 at 2. Petitioner chose to make a written appeal by letter to Keith. On December 22, 1989, his appeal was denied, and he was notified by final FAA order that his authorization would not be renewed. R. Tab 20.
 
 
 7
 In his petition for review, petitioner argues that (1) he was denied due process in the FAA decision not to renew his designation in that he was not afforded an evidentiary hearing, was not afforded an opportunity to confront and cross-examine the people the FAA claim had lodged complaints regarding his attitude, and was not fully informed of the specific incidents and complaints of uncooperative attitude which led to his nonrenewal, and (2) the FAA's decision regarding nonrenewal of his COA was not supported by sufficient evidence. We exercise jurisdiction under 49 U.S.C. app. Sec. 1486 and affirm.
 
 SCOPE OF REVIEW
 
 8
 The Federal Aviation Act of 1958 sets forth the guidelines to be followed in seeking judicial review of an FAA decision. "The findings of facts by the Board or Secretary of Transportation, if supported by substantial evidence, shall be conclusive." 49 U.S.C. app. Sec. 1486(e); City of Pompano Beach v. FAA, 774 F.2d 1529, 1539 (11th Cir.1985). Substantial evidence supporting the agency's findings exists if the record reveals " 'relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion.' " Id. at 1540 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "[C]ircumstantial evidence in the record may contribute to the substantial evidence supporting an agency's findings.... [N]ot only must the agency's factual findings be supported by substantial evidence, but the agency's nonfactual analysis ... and conclusion must also be reasonable and not arbitrary and capricious." City of Pompano Beach v. FAA, 744 F.2d at 1540.
 
 
 9
 "When courts review administrative agency decisions, they give great deference to agency determinations. ... [T]he [agency's] decision will be upheld unless [it] failed to consider all relevant factors and articulate a rational connection between the facts found and the choice made." Action, Inc. v. Donovan, 789 F.2d 1453, 1457 (10th Cir.1986); see also Wilder v. Prokop, 846 F.2d 613, 619 (10th Cir.1988).
 
 DISCUSSION
 
 10
 Due process requires, at a minimum, notice and an opportunity to be heard in a meaningful time and manner. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985); Goldberg v. Kelly, 397 U.S. 254, 267 (1970). In order to be entitled to procedural due process, petitioner must demonstrate that he is being deprived of a liberty or property interest by governmental action. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Because we here conclude that petitioner was afforded all the process due in any event, we do not decide whether he possessed a protected property interest in his DER status. See Meder v. City of Oklahoma City, 869 F.2d 553, 554 (10th Cir.1989).
 
 
 11
 Petitioner initially argues that he was denied due process because he was not afforded an opportunity for a hearing. In determining whether a full evidentiary hearing is required, the court must balance three factors: (1) the nature of the individual interest at stake; (2) the risk of erroneous deprivation and the probable value of additional procedural safeguards; and (3) the nature of the governmental interest involved. Rosewitz v. Latting, 689 F.2d 175, 177 (10th Cir.1982) (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).
 
 
 12
 "The formality and procedural requisites for the hearing can vary depending upon the importance of the interests involved...." Boddie v. Connecticut, 401 U.S. 371, 378 (1971). In the present case, the record indicates that petitioner was offered multiple opportunities to fully present his case, orally and in writing, to Borfitz. He subsequently was offered two opportunities to present recorded oral appeals, once to Borfitz, R. Tab 10 at 5, and once to Keith, R. Tab 15 at 2. The record indicates that he waived both of these opportunities in favor of written appeals. Petitioner thus received adequate opportunity to respond, and an opportunity to make a recorded oral appeal to an impartial decisionmaker. Whether he had exceeded the bounds of his authority was fully aired in the exchange of letters. Moreover, the determination that petitioner's argumentative attitude was sufficiently egregious to warrant nonrenewal is basically a judgment call, and we fail to see how an evidentiary hearing would have changed the outcome of this decision. Under these circumstances, the risk of erroneous deprivation was not great, see Rosewitz, 689 F.2d at 177, and the lack of a full evidentiary hearing did not violate petitioner's constitutional rights to due process.
 
 
 13
 Next, we address petitioner's contention that he was not allowed to confront those "people in the FAA" who complained regarding his argumentative and uncooperative attitude. R. Tab 10 at 5. This court has previously determined that a party is not necessarily entitled to "be present when others testified against [him], or to cross-examine those witnesses." Rosewitz v. Latting, 689 F.2d at 178. Petitioner was given "clear notice" and an opportunity to present his version of the case to the investigating party and to appeal the decision to an impartial party. See id. at 177; see also Boston v. Webb, 783 F.2d 1163, 1167 (4th Cir.1986) (cross-examination not required where party given two opportunities to refute charges).
 
 
 14
 Petitioner further argues that he was not given adequate notice of the specific complaints against him. We disagree. Because our discussion of this argument requires an examination of the evidence in the record supporting the FAA decision, in the interest of brevity and to avoid repetition, we join this issue with petitioner's question of the sufficiency of the evidence.
 
 
 15
 FAA Order 8110.4, section 195(a)(4) states that "[a]ll Designated Engineering Representatives must: ... (4) [p]ossess integrity, sound judgment, and a cooperative attitude." All of these qualities were called into question by the FAA in their decision not to renew petitioner's COA. In a letter dated December 23, 1988, from the manager of the Chicago Aircraft Certification Office to the manager of the Denver Aircraft Certification Office, it was stated that "Mr. Marcy ... exhibits an unwillingness to represent the FAA and its viewpoint when said viewpoint differs from his.... [H]e continues his argument, expending considerable energy explaining why he feels something shouldn't be required.... [He] has a tendency to take policy and guidance or regulatory material out of context to support his own viewpoint." R. Tab 3 at 1.
 
 
 16
 In his own responses to the FAA's concerns regarding his renewal, petitioner himself acknowledged that there had been numerous incidents where he had strongly disagreed with his FAA supervisors. He stated to Keith, in reference to some of the FAA engineers he had worked with, that "you would chuckle at some of the examples of ignorance I have encountered." R. Tab 17 at 5. In his responding letter of February 10, 1989, petitioner continued to stress his right to disagree and to "present reasoned, rational arguments and alternative interpretations of regulations." R. Tab 9 at 10-11. In his appeal letter to Borfitz dated August 11, 1989, petitioner admitted his knowledge that the FAA decision not to renew his designation was based on "two specific incidents, plus a background of no more than half a dozen additional projects on which there have been extensive discussions and disagreement with [the FAA]." R. Tab 13 at 1. In the same correspondence petitioner stated, "What you perceive as an argumentative and uncooperative attitude is my response to numerous instances of vague and often incorrect guidance and direction from the FAA." Id. at 2. He then proceeded to list twenty-two such instances which he perceived to be incorrect and worthy of argument. Id. at 2-4.
 
 
 17
 Petitioner further stated,
 
 
 18
 It is quite apparent that the real difference between us is perception of an uncooperative attitude: an unwillingness to accept supervisory direction without question, whether or not that direction is correct. You state that many FAA engineers have corroborated this. However, the FAA project officers have seldom, if ever, specifically stated that I was ordered to accept their direction.... In the future, when I cannot agree with the direction I receive from FAA project engineers, I will request that you submit the question to higher authority.
 
 
 19
 Id. at 4. He also stated that he was willing to accept nonrenewal of his certification due to "insubordination, provided that it is explicitly stated that [his] professional and ethical integrity are not in question." Id. at 5. It is our view that the tone of these attempts to dissuade the FAA decision are, in themselves, indicia of an argumentative attitude.
 
 
 20
 In petitioner's appeal letter to Keith dated November 6, 1989, he acknowledged that his uncooperative attitude was the "principle issue" presented as reason for his nonrenewal. R. Tab 17 at 4. In the same vein, petitioner referred to a letter he wrote to the ACFO in July, 1985, in response to his nonrenewal in that year, in which he stated his regret for his uncooperative attitude and his promise to correct the problem. Later in the same reference, he asserted that the allegations of uncooperative attitude were based upon "less than a dozen incidents out of more than 700 technical reports." Petitioner continued to argue that in all such incidents, "interpreted by the ACFO as an uncooperative attitude," the FAA failed to consider that petitioner expressed "the more correct view." Id. at 5. It is clear from petitioner's various responses that he was aware of the grounds upon which the FAA based its decision, and that he had sufficient notice and knowledge of the specifics of the problem. These admissions fatally dilute his contention that he was not notified of the FAA's concerns. Petitioner's own admissions provide meaningful evidence of his history of argumentative and uncooperative behavior.
 
 
 21
 FAA Order 8110.37, the Designated Engineering Representative Guidance Handbook states,
 
 
 22
 g. Designation Renewals. A DER's designation expires annually and must be either renewed or terminated for cause. The cause could be any of the following:
 
 
 23
 (1) DER services are no longer needed by FAA, as evidenced by insufficient DER activity;
 
 
 24
 (2) The DER becomes an employee of a DAS (ref. par. 9c);
 
 
 25
 (3) The company terminates the DER's employment; or
 
 
 26
 (4) Continued integrity is not found in the DER's work or communications.
 
 
 27
 In addition to allegations that petitioner exhibited an argumentative and uncooperative attitude, the decision not to renew petitioner's certificate was based upon two main incidents in which the FAA claimed that petitioner exceeded the bounds of his authority in violation of agency regulations. In regard to the first incident, the FAA contended that petitioner approved electrical data on the installation of a "hot plate" (windshield) on a Cessna 402B aircraft, and further approved the hot plate for adequate visibility without actually examining the airplane's visibility. The FAA further asserted that these actions would have allowed the aircraft to fly into icy conditions without the proper determination of safety. Although admitting that he "inadvertently" checked the "approved" box rather than the "approval recommended" box on FAA Form 8110-3, petitioner continued to argue that the replacement of the windshield was a "minor" rather than a "major" modification and therefore his actions were within his realm of authorization. However, while disavowing willful intent, petitioner admitted that his report regarding this project was "poorly conceived and executed." R. Tab 14 at 2.
 
 
 28
 The second incident cited by the FAA involved fatigue testing approval of a strut modification on Cessna 120 and Cessna 140 aircraft. It is this incident which provoked the previously referenced letter from the manager of the Chicago ACFO regarding his problems in working with petitioner on this project. The record indicates that petitioner strongly disagreed with the Chicago ACFO regarding this matter and continued, for some time, to argue his point, both by telephone and letter. It is unclear whether this incident involved petitioner's approval of the actual fatigue testing or his disagreement with the need for the fatigue testing. This resolution, however, is not germane to our conclusion that once again petitioner refused to bend to the ultimate authority of the FAA, and continued to insist upon his own interpretation of the appropriate regulations.
 
 
 29
 Petitioner was reinstated as a DER in 1986 following his agreement to correct his attitude problems. Substantial evidence supports the FAA's conclusions that petitioner failed to live up to this agreement, and therefore his problems had to be considered "chronic and uncorrectable" creating a liability which defeated the FAA purpose in the DER program. R. Tab. 10 at 5.
 
 
 30
 In conclusion, upon a thorough review of the record, it is our determination that the FAA's decision not to renew petitioner's DER status was supported by substantial evidence and was neither arbitrary nor capricious. The parties' respective requests for oral argument are DENIED. Petitioner's request for attorney's fees is DENIED. The final order of the FAA denying renewal of petitioner's designated engineering representative certificate of authorization is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 49 U.S.C. app. Sec. 1355(a) states in part:
 [T]he Secretary of Transportation may, ... delegate to any properly qualified private person, or to any employee or employees under the supervision of such person, any work, business, or function respecting (1) the examination, inspection, and testing necessary to the issuance of certificates under subchapter VI of this chapter, and (2) the issuance of such certificates in accordance with standards established by him. The Secretary of Transportation may ... rescind any delegation made by him pursuant to this subsection at any time and for any reason which he deems appropriate.